UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:17-00092 |
| | ) | JUDGE TRAUGER |
| | ) | |
| TAD ERIC CUMMINS | ) | |

## POSITION STATEMENT

Mr. Cummins submits that the advisory guideline range of life is greater than necessary to satisfy the statutory objectives of sentencing under 18 U.S.C. § 3553(a) and significantly overstates his culpability. He submits that a sentence of 120 months is appropriate.

**I.    Objections to Presentence Report**

Through counsel, Mr. Cummins submits several unresolved objections to his Presentence Report (PSR). Some of these objections are based on the PSR's inclusion of contradictory factual allegations that were drawn entirely from a televised interview that M.T. gave on ABC's 20/20 on September 21, 2018.

**A.    Factual inaccuracies in the PSR**

The conduct at issue occurred in March and April of 2017. Following the arrest of Mr. Cummins, M.T. gave several interviews to law enforcement – both in California immediately following the arrest and soon after in Tennessee on June 8, 2017 and July

17, 2017. Both discovery, and the factual scenario from the plea hearing were consistent in the fact that there was no force or violence involved in Mr. Cummins' conduct. Mr. Cummins pleaded guilty on April 4, 2018. M.T. gave the interview to 20/20 in September of 2018, nearly a year and a half after the incident occurred. Her unsworn, contradictory account was given to an interviewer on a television program, not to law enforcement.

The Government has indicated that it does not plan to put on any proof regarding the unsubstantiated allegations that are present in the PSR. Although he accepted responsibility for his behavior and decided to plead guilty, Mr. Cummins denies these new allegations in their entirety. These factual contradictions were unanticipated at the time that Mr. Cummins decided to plead guilty to the charged conduct. These allegations are not supported by proof, are contradicted by the discovery that was provided before Mr. Cummins pleaded guilty, and have a significant—and unanticipated—effect on the specific enhancements that Mr. Cummins now faces.

The government bears the burden of proof on factual issues that cause an increase in a potential sentence. *See United States v. Adu*, 82 F.3d 119, 123 (6th Cir. 1996). "In cases where the applicability of an enhancement provision is contested, the government bears the burden of establishing the enhancement factors by a preponderance of the evidence." *United States v. Feinman*, 930 F.2d 495, 500 (6th Cir.

2

1991) (citing *United States v. Silverman,* 889 F.2d 1531, 1535 (6th Cir. 1989)). As counsel understands, the Government does not intend to put on proof to support these new statements.

### 1. Objections to Paragraph 21

Through counsel, Mr. Cummins objects to the language "Cummins was aware of M.T.'s particular vulnerability due to her personal circumstances." Mr. Cummins does not concede this. Further, it appears to be a legal conclusion. It would be more accurate to state that Mr. Cummins was aware that M.T. had difficulties with her family.

### 2. Objections to Paragraphs 24

Mr. Cummins does not admit these facts, and objects to probation's reliance on M.T.'s statements from a televised interview on ABC's 20/20. Neither the defense nor the government submitted this interview to probation, and these statements are unreliable. Mr. Cummins also requests that the many contradictory statements from M.T.'s prior statements be included in the PSR's factual summary as well. These include two separate video-taped interviews by law enforcement, as well as various written statements provided in discovery. These statements contradict the 20/20 interview and state, among other things, that M.T.: 1) planned on running away anyway and had a backpack packed; that she believed Mr. Cummins accompanied her for protection; and that she was not kidnapped; 2) that on the trip, Mr. Cummins asked if she wanted to turn herself in and she said no, and 3) that she had a great time on the trip.

3

### 3. Objections to Paragraphs 25-28

Mr. Cummins objects to all of the factual allegations contained in paragraphs 25-28.

### B. Legal objections to the PSR

As explained above, the new, contradictory facts in the PSR change the advisory Guidelines enhancements that Mr. Cummins faces at sentencing. Because he denies both the substance and reliability of these facts, many of the enhancements in the PSR are inappropriate.

#### 1. Objection to enhancement for unduly influencing a minor.

Mr. Cummins objects to application of the two level enhancement pursuant to U.S.S.G. § 2G1.3(b)(2)(B). (PSR at p. 38). The factual basis underlying this enhancement relies solely on statements given in a televised interview that are contradicted by M.T.'s prior statements. Although Mr. Cummins was at least 10 years older than M.T., he did not exert undue influence over her. Rather, she stated that she was planning on running away anyway, that she already had a backpack packed and arranged transportation to meet Mr. Cummins at Shoney's.

#### 2. Objection to Section 4B1.5(b)'s five-level increase in offense level, which constitutes unsound policy and does not reflect the sentencing purposes of 18 U.S.C. § 3553(a).

Section 4B1.5(b) was added to the Guidelines in November 2001 in response to a

4

Congressional directive that ordered the Sentencing Commission to increase penalties for defendants who "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Pub. L. 105-314, Sec. 505. Specifically, 4B1.5(b) provides:

> In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> (1) The offense level shall be five plus the offense level determined under Chapters Two and Three. However if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1.
>
> (2) The criminal history category shall be the criminal history category determined under Chapter Four, Part A.
> U.S.S.G. 4B1.5(b).

A defendant engaged in a "pattern of activity" if "on at least two separate occasions, [he] engaged in prohibited sexual conduct with a minor . . . "without regard to whether the occasion . . . occurred during the course of the instant offense [or] resulted in a conviction for the conduct that occurred on that occasion." U.S.S.G. 4B1.5(B), cmt. n. 4(B).

For several reasons, § 4B1.5(b)'s five level enhancement constitutes unsound policy, particularly as applied to Mr. Cummins. First, the Commission adopted this substantial enhancement not on the basis of empirical data, national experience, or its own careful examination of how to best achieve § 3553(a)'s sentencing objectives, but instead in response to a Congressional directive mandating it to increase penalties for

5

offenders engaged in a pattern of sexual abuse of minors. Second, in amending the guidelines to comport with the Congressional directive, the Commission defined a pattern of activity to include the instant course of conduct though it had no empirical basis for treating offenders with no prior history of sex crimes as harshly as defendants with a prior history in addition to the instant charges. As a result, a defendant like Mr. Cummins – with absolutely no criminal history and certainly no history of prohibited sexual conduct – is subject to the very same enhancement as a defendant with a prior history (and perhaps even a very substantial prior history) of sex crimes.

Mr. Cummins' conduct against a single minor victim in this case is certainly very serious. But, by placing Mr. Cummins at a total offense level just shy of the highest offense level available in the sentencing table, the guidelines wrongly suggest that his conduct is the worst of the worst. This is simply not the case. The suggested Guidelines punishment of 30 years, which will effectively become a sentence of life in prison, is far greater than necessary to achieve the sentencing goals.

### C. Mr. Cummins' Guidelines range significantly overstates his culpability.

Mr. Cummins respectfully submits that the advisory guideline range of 292 to 365 months and the recommended sentence of 360 months is greater than necessary to satisfy the statutory objectives of sentencing under 18 U.S.C. § 3553(a).

6

Case 3:17-cr-00092   Document 112   Filed 01/14/19   Page 6 of 12 PageID #: 605

As this Court is aware, the United States Sentencing Guidelines are not binding at sentencing, and this Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). No "extraordinary" circumstances are required to justify a sentence outside the Guidelines range. *United States v. Bolds*, 511 F.3d 568, 580-81 (6th Cir. 2007). Rather, the district court must instead "'make an individualized assessment based on the facts presented' and upon a thorough consideration of all of the § 3553(a) factors." *Id*. at 580 (citation omitted).

> **1. Mr. Cummins' sentencing guidelines range is greater than necessary to achieve the goals of sentencing.**

Here, the Guidelines, U.S. Probation, and the Government are essentially asking that the Court sentence Mr. Cummins to die in prison. Such a death sentence is far greater than necessary. A court shall "impose a sentence sufficient, but not greater than necessary" to fulfill the objectives of 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005); *United States v. Barnett*, 398 F.3d 516, 528 (6th Cir. 2005) ("Under the new post-*Booker* framework, the district court is empowered with greater discretion to consider the factors provided in 18 U.S.C. §3553(a) in determining a proper sentence.") Further, a court must remain mindful that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. §3582(a). The United States Sentencing Guidelines are now but one of several factors a court must consider in sentencing a defendant. *Id.*

A district court is free to accept or reject the advisory guidelines sentencing range. *Rita v. United States*, 551 U.S. 338, 351 (2007) ("[The district court] may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, U.S.S.G. §5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless.") Referring to those factors declared in §5H of the Guidelines to be "not ordinarily relevant," the Supreme Court confirmed the more expansive authority of a district court by noting that under the advisory scheme "[t]hese are, however, matters that § 3553(a) authorizes the sentencing judge to consider." *Id.*, at 2473 (Stevens, J., concurring).

As with the crack cocaine guidelines, a district court has the authority to vary from any guideline "based on a policy disagreement . . . and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *See Spears v. United States*, 555 U.S. 261, 264 (2009) (explaining the district court's authority to vary from crack guidelines on policy grounds); *United States v. Herrera-Zuniga*, 751 F.3d 568, 583-84 (6th Cir. 2009) (explaining that "the authority recognized in *Spears* to reject on policy grounds an otherwise-applicable aspect of the Sentencing Guidelines" is not limited to the crack cocaine context). A sentencing court has

8

particular authority to disagree with a guideline's sentencing recommendation when the Sentencing Commission has failed to fulfill its characteristic institutional role in developing the particular enhancement at issue. *See Kimbrough v. United States*, 552 U.S. 85, 109 (2007).

### 2. Mr. Cummins' offense more closely resembles a state sex offense, and it should be punished as such to avoid unwarranted sentencing disparities.

This Court has a statutory duty to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Here, this case is unusual because, as discussed above, it is not a "typical" violation of the Mann Act. Rather, it more closely resembles a state sexual offense, and such offenses offer a better touchstone for determining an appropriate sentence.

Had Mr. Cummins and M.T. remained in Tennessee, traveling to another part of the state, for instance, their sexual activity would have been punishable only under state law. Most likely, it would be charged as aggravated statutory rape, a class D felony under TCA 39-13-506. That crime is punishable by between 2 and four years of imprisonment. See TCA 40-35-112(a)(4). However, because Mr. Cummins and M.T. crossed state lines, the crime falls under federal jurisdiction and he now faces an inflated guidelines range. Mr. Cummins would note that Alabama is less than an hour from the town. The artificial borders within the same country should not be able to

9

generate such an increase in punishment. Furthermore, there are multiple sources analyzing cases of teachers who have sex with their students. Many receive several years or probationary sentences.[1]

For this conduct, 30 years represents death in prison and an extremely severe sentence for a man with no criminal history. Statutorily, this Court must sentence Mr. Cummins to a sentence of at least 10 years. That sentence would still be longer than he would face under state law and represents a fair sentence.

> **3. The many enhancements in the PSR generate a guidelines range that overstates Mr. Cummins' culpability and are grounds for a downward variance.**

Objections to several enhancements are laid out above, however Mr. Cummins respectfully submits that several enhancements increase his advisory Guidelines range above his culpability. For example, Mr. Cummins' advisory guidelines range is increased by two levels pursuant to U.S.S.G. § 2G1.3(b)(1) because it alleges that M.T. was in the custody, care, or control of Mr. Cummins. (PSR at 37.) Similarly, U.S. Probation recommends a two level enhancement under U.S.S.G. § 2G1.3(b)(2 )(B) for

---

[1] *See, e.g., In teacher-student sex cases, men average longer jail terms, newspaper analysis reveals*, Julie Terruso, New Jersey Star Ledger, April 29, 2013, available at https://www.nj.com/news/index.ssf/2013/04/a_look_at_teacher-student_sex.html (analyzing 97 cases of teachers who had sex with their students, and noting that "[m]en averaged 2.4 years in prison compared with 1.6 years in prison for women, or 50 percent more time); *A look at the sentences given to teachers accused of sexual contact with students*, Nick Gremillion, WAFB, January 23, 2018, available at http://www.wafb.com/story/37332499/a-look-at-the-sentences-given-to-teachers-accused-of-sexual-contact-with-students/ (examining cases of teacher-student sex where teachers were sentenced to probation or up to five years in jail).

10

unduly influencing a minor. Here, the PSR asserts that the enhancement applies because of the age difference. However, this is also implicit in the above enhancement for being a teacher under U.S.S.G. § 2G1.3(b)(1). According to the National Center for Education Statistics, the average age of teachers in the United States is 42.4 years. Almost 85% of U.S. teachers are over the age of 30 (https://nces.ed.gov/surveys/sass/tables/sass1112_2013314_t1s_002.asp). As such, almost every case charged with a teacher and student would also call for an enhancement based singularly on the age difference between the two parties.

These duplicitous enhancements unfairly inflate his sentence more than is warranted and provide proper grounds for a downward variance.

### III. Conclusion

Mr. Cummins respectfully submits that a sentence of 120 months is sufficient but not greater than necessary to serve the statutory purposes of sentencing.

Respectfully submitted,

s/ *Dumaka Shabazz*
DUMAKA SHABAZZ (BPR#022278)
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, TN 37203
Telephone: 615-736-5047
E-mail: dumaka_shabazz@fd.org

11

## CERTIFICATE OF SERVICE

      I hereby certify that on the 14th day of January, 2019, I electronically filed the foregoing Position Statement with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Sara E. Myers and Philip H. Wehby, Assistant United States Attorneys, 110 Ninth Avenue South, Suite A-961, Nashville, Tennessee 37203-3870.

                                            s/ *Dumaka Shabazz*
                                            DUMAKA SHABAZZ